## In re TAYLOR.

### (District Court, D. Massachusetts. October 22, 1902.)

### No. 1,369.

1. HABEAS CORPUS—PRISONER HELD FOR EXTRADITION—SCOPE OF INQUIRY.

In habeas corpus proceedings for the discharge of a prisoner held for extradition to a foreign country, the court is not bound to accept the statement of the complaint that the place where the alleged offense was committed was at the time of its commission within the territorial jurisdiction of such foreign country, but should determine that question for itself, being governed by the action of the legislative or executive branch of the government with respect to the political status of the place or country where the offense is laid, if any such action has been taken, and, if not, acting upon such information as it deems most trustworthy, to obtain which it may consult the treaties, statutes, or decisions of foreign countries.

2. EXTRADITION — SCOPE OF TREATY WITH GREAT BRITAIN—OFFENSE COMMITTED IN SOUTH AFRICAN REPUBLIC.

The territory of the South African Republic was not a part of the dominions of Great Britain, in an ordinary or unqualified sense, prior to the proclamation of Lord Roberts of 1900, making it a British colony, nor in such sense as to bring it within the purview of the extradition treaty of 1889 between Great Britain and the United States; and under that treaty Great Britain cannot require from the United States the extradition of a person for an offense alleged in the complaint to have been committed at Johannesburg prior to the date of such proclamation.

3. SAME—CONSTRUCTION OF TREATY.

The treaty of 1889 between Great Britain and the United States, providing for the extradition of persons charged with offenses "committed within the jurisdiction of" either party, does not authorize the extradition of a person charged with the commission of an offense in a place or country which was not at the time within the jurisdiction of the country seeking the extradition, although it has since been brought within such jurisdiction.

Petition for Writ of Habeas Corpus.

William H. Preble, for petitioner.
H. E. Bolles, for British consul.

LOWELL, District Judge. The petitioner for habeas corpus was arrested and held by the United States commissioner for extradition to Great Britain. The complaint on which he was arrested alleges that the offense was committed "between October 1, 1899, and February 1, 1900, at Johannesburg, within the jurisdiction of his Britannic majesty." At the time in question, Johannesburg was in the physical and political control of the South African Republic, and Lord Roberts' proclamation annexing the territories of that republic to Great Britain had not been issued. By order of the court, the United States district attorney was informed of the pendency of these proceedings, and it is understood that he has sought instructions from the department of justice. He has not addressed this court either in support of or in opposition to the issuance of the writ.

The counsel for the British government contends:

1. That this court cannot pass upon or consider the political status of Johannesburg, or any other place mentioned in extradition proceed-

ings, but is bound to accept the statement of the complaint,—at all events, if supported, like this complaint, by a certificate of the United States ambassador in London that the offense is "alleged to have been committed in his majesty's colony of the Transvaal." He contends that the political status of Johannesburg is to be determined solely by the secretary of state. That habeas corpus will issue to release a person held for extradition to Great Britain on account of a crime alleged to have been committed in Paris, for example, is too plain for argument, and the case would not be different if the complaint alleged that Paris was within the dominions of his Britannic majesty. If the legislative or executive department of the government of the United States has taken action regarding the diplomatic or international status of any place or country, this court is ordinarily bound by that action. But it is bound, also, to inquire what that action has been, and to govern itself accordingly. The court does not, as was suggested by the learned counsel for the British consul, refuse to take any action for fear that its decision may not be approved thereafter by the legislative or executive department. It investigates the question presented, follows the decisions made by the legislative and executive departments, where these decisions exist, and, in their absence, decides for itself upon such information as it deems most trustworthy. Jones v. U. S., 137 U. S. 202, 216, 11 Sup. Ct. 80, 34 L. Ed. 691. Thus, in Terlinden v. Ames, 184 U. S. 270, 22 Sup. Ct. 484, 46 L. Ed. 534, the court consulted not only the public acts of the United States, but those of foreign countries, such as their treaties, statutes, and the decisions of their courts bearing upon the question involved.

2. If this court can consider the political status of Johannesburg before Lord Roberts' proclamation, counsel for the British consul contends that, at the time this offense is alleged to have been committed, Johannesburg was within the British dominions, so that the British government could then have demanded extradition for a crime committed there. The legislative and executive branches of our government have recognized officially that the South African Republic was not in an unqualified sense within the dominion of his Britannic majesty prior to the proclamation of Lord Roberts. Congress provided for a consul to Pretoria, which place is stated in the act to be within the South African Republic. 30 Stat. 269, 830. Following Jones v. U. S., ubi supra, this court has inquired of the department of state, and has been informed that the commission of the consul at Pretoria contained no reference to the British government, and that his exequatur was granted by the government of the South African Republic. These facts do not show that that republic was completely independent of Great Britain, but they do show that its territory was not part of the British dominions in an ordinary or unqualified sense. Moreover, there is ample evidence that the British government itself did not before 1900 claim unqualified jurisdiction over Johannesburg. What may have been the meaning of the convention of 1881, it boots not to inquire, but by article 4 of the convention of 1884 the South African Republic was permitted to make treaties with foreign powers generally, and these treaties were to be deemed valid unless objected to within six months by the British government. 75 Hertslet, State

Papers, p. 10. Such treaties were made, in one case formally approved by the British government (76 Hertslet, State Papers, p. 264); in another case, not formally objected to (Id. p. 512); and these treaties made some provision for extradition. The international status of the South African Republic, as recognized by Great Britain and the other countries of the world, is illustrated by the universal postal convention. 30 Stat. 1629. There Great Britain and the British colonies are not treated as including the South African Republic. See, especially, pages 1658, 1659, 1692. That by virtue of the treaty of 1889 between Great Britain and the United States the latter would have sought before 1900 to obtain from Great Britain extradition to this country of a fugitive from American justice found in Johannesburg is not to be supposed. If this be true, as reciprocity is ordinarily an element in extradition, it follows that Great Britain would not before 1900 have deemed itself entitled to demand from this country the extradition of a person charged with a crime committed in Johannesburg. This court is informed by the department of state that no record is found in the department of any request for the extradition of a person alleged to have committed crime in the South African Republic and a fugitive in the United States, or of a person alleged to have committed crime in the United States and a fugitive in the South African Republic. For the purposes of this case, Johannesburg must be treated as without the purview of the treaty of 1889 at the time the offense in question is alleged to have been committed. In spite of the learned and ingenious argument of counsel for the British consul, I have not the slightest doubt that any British court would agree to this proposition.

3. Counsel for the British consul contends that the petitioner should be extradited even if at the time when the offense was committed the place of its commission was outside British territory. He contends that it is sufficient if the place where the offense was committed is within British territory at the time when extradition is sought. That the president and senate would have authority to make a treaty with this intent is not doubted, but the court has to consider, not what might have been done, but what is the meaning of the words used in the treaty, viz., "committed within the jurisdiction of" either party. That Great Britain has jurisdiction to punish the petitioner, if it can lay hands on him, is not doubted. Ordinarily an act is not said to be committed within the jurisdiction of A. unless the place where the act was committed was at the time of its commission within the jurisdiction of A. That this interpretation of the treaty of 1889 would lead in some instances to the escape of criminals cannot be denied. There was no treaty between the United States and the South African Republic when this offense was alleged to have been committed. · Before annexation the petitioner could not have been extradited, and so the annexation, even if it has not assisted justice, has not hindered it. But counsel for the British consul asks if the United States could not in 1899 ask for the extradition from England of a person alleged to have committed a crime in Porto Rico before 1898. Before the annexation of Porto Rico, Spain could have obtained extradition in the case supposed; is the criminal to escape altogether because the place where the

offense was committed has changed its political status? This court is informed by the department of state that there appears to have been no case in which the United States, since the annexation of Porto Rico and the Philippines, has sought or obtained from any government the extradition of a person charged with having committed a crime in Porto Rico or the Philippines before the annexation of those islands. The absence of an attempt at extradition does not prove much, but in the absence of authority to the contrary, in the absence of legislative or executive interpretation, in the absence of intervention by the department of justice, as representing the executive, in this particular case, the words "committed within the jurisdiction" must receive their natural interpretation, and cannot be held to include acts committed in a place which has been annexed to Great Britain since the act was committed.

Writ to issue.