UNITED STATES ex rel. OPPENHEIM v. HECHT, U. S. Marshal.

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 259.

1. Extradition ⬡⟾5—Resident of Scotland is subject to extradition under indictment for making false entries, subsequently made crime by Bankruptcy Act (Bankruptcy Act, § 29b, as amended by Act May 27, 1926, § 11 [44 Stat. 665]).

Under the Treaty with Great Britain of 1905 (34 Stat. 2903), authorizing extradition in case of offenses against Bankruptcy Act, resident of Scotland is subject to extradition under indictment for offense of making false entries in ledger and cash book, although such offense was not made a crime in the United States until after commission thereof, by Act May 27, 1926, § 11 (44 Stat. 665), amending section 29b, Bankruptcy Act.

2. Extradition ⬡⟾1—Extradition proceedings are not criminal, nor is extradition punishment for crime.

Extradition proceedings are not in their nature criminal, even if relator is a criminal, and extradition is not punishment for crime.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Samuel Oppenheim, against William C. Hecht, United States Marshal. Order dismissing the writ, and relator appeals. Affirmed.

The relator is a citizen of the United States, but in and before October, 1924, was a resident of and pursued a business in Glasgow, Scotland. In that month he there filed a voluntary petition in bankruptcy in the appropriate court.

Shortly after filing this petition Oppenheim came to this country. In Scotland he was indicted for the offense of "making false entries in his ledger and cashbook," and doing the same "in contemplation of bankruptcy and within four months of the presentation of the petition."

At the time of the commission of this alleged offense there was no statute in force in the United States rendering criminal the exact act for which Oppenheim was indicted in Scotland; but the same became a crime

by the amendment to section 29b of the Bankruptcy Act of 1898, which took effect August 27, 1926 (Act May 27, 1926, c. 406, § 11, 44 Stat. 665).

After the effective date of this statute, extradition proceedings were begun against Oppenheim, and he was arrested under the usual warrant. Before any hearing had been had he took out this habeas corpus, alleging in substance that since, at the time of the offense alleged against him in Scotland, his act was not a crime in the United States, he was not within the purview of any extradition treaty.

The court below held that he was subject to extradition, and dismissed the writ, whereupon he appealed.

William E. Russell, of New York City (M. Wallace Dixon, of New York City, of counsel), for appellant.

Edward H. Lockwood, of New York City, for respondent and demanding government.

Before HOUGH, MANTON, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We have not before us the papers upon which the warrant in extradition was issued, much less any evidence tending to sustain or rebut the case against Oppenheim; for this appeal is based on a single legal point, viz. that, no matter how technically perfect the demanding documents may be, nor how complete the proof of relator's guilt, he is immune from extradition, because, when he became a fugitive from Scottish justice and sought refuge in this country, there was no law in being authorizing his surrender.

[1] Speculation as to possible methods of surrender by executive or even congressional action is useless; for practical purposes the question is single: Do existing treaties authorize the surrender of this relator? The basic agreement with Great Britain is still the Ashburton Treaty of 1842 (8 Stat. 572), which requires that surrender shall be granted only "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed."

Admittedly, if our law at the time of demand applies, this requirement was fulfilled.

By subsequent conventions or treaties of 1889 (26 Stat. 1508) and 1900 (32 Stat. 1864) additional crimes were recognized as justifying extradition. We do not think they assist in this matter; but the treaty of 1905 (34 Stat. 2903) adds to the list of extraditable crimes, "offenses, if made criminal by the laws of both countries, against bankruptcy law."

For the purposes of this appeal, relator was, when demand made, guilty of such an offense against bankruptcy law. That he did not at any time commit an offense against the bankruptcy statute of the United States is obviously immaterial.

Thus the point stated becomes more specifically this: Oppenheim cannot be extradited because, in 1924, he was not guilty of an offense *then* "made criminal by the laws of both countries."

The treaties do not contain in terms any such restriction, nor do they in terms refer the time of criminality "by the laws of both countries" to the time of demand; the matter is one of judicial or professional construction.

We think the settled construction is against relator.

[2] Extradition proceedings are not in their nature criminal, even if the relator is a criminal; extradition is not punishment for crime, though such punishment may follow extradition; therefore all talk of ex post facto legislation, or of the niceties of common law on the criminal side, is quite beside the mark. Glucksman v. Henkel, 221 U. S. 508, 31 S. Ct. 704, 55 L. Ed. 830; Grin v. Shine, 187 U. S. 181, 23 S. Ct. 98, 47 L. Ed. 130.

In principle, the point submitted was completely covered by In re De Giacomo, 12 Blatch. 391, Fed. Cas. No. 3747, where the relator sought refuge in this country from the law of Italy, before any extradition treaty existed between the two governments; when one was arranged, it was held to authorize the fugitive's surrender. The authority of this decision by Blatchford, J., has never been challenged. Cohn v. Jones (D. C.) 100 F. 639, is not opposed, and is we think, irrelevant, while In re Taylor (D. C.) 118 F. 196, covers a wholly different point, viz. that the relator never committed any crime against the demanding government, an admittedly fatal defect, if true in fact.

The rule is thus stated by the highest modern American authority:

"Extradition treaties, unless they contain a clause to the contrary, cover offenses prior to their conclusion," and, "where no special stipulation on the subject is made, the exchange of ratifications has a retroactive effect." Digest of International Law, vol. 4, p. 268 et seq., by Hon. Jno. Bassett Moore, now of the World Court.

If asylum is thus destroyed by the making of a treaty, a fortiori is it taken away when one of the high contracting parties somewhat belatedly recognizes as criminal a well-known act of commercial immorality.

Order affirmed.