## UNITED STATES ex rel. DONNELLY v. MULLIGAN, United States Marshal.*

District Court, S. D. New York.

Aug. 17, 1934.

On Reargument Sept. 4, 1934.

*Order reversed — F.(2d) —.

The provision in question (article VII of the French Treaty of 1909 [37 Stat. 1526, 1531]) reads: "No person surrendered by either of the High Contracting Parties to the other shall be triable or tried or be punished for any crime or offense committed prior to his extradition, other than the offense for which he was delivered up, nor shall such person be arrested or detained on civil process for a cause accrued before extradition, unless he has been at liberty for one month after having been tried, to leave the country, or, in case of conviction, for one month after having suffered his punishment or having been pardoned."

The relator was indicted by the grand jury of New York county in December, 1930. Subsequently, he was apprehended in and extradited from France. He contends that he is still in the custody of the Court of General Sessions of the county of New York, but it affirmatively appears on the papers before me that he was discharged by that court on May 21, 1934, on his own recognizance, so that a warrant of the United States might be executed.

Said warrant was issued in a proceeding seeking the relator's extradition to Canada on a charge pending there which arose prior to his extradition from France to the United States, and was immediately executed, and the relator is now in custody of the federal authorities awaiting the action of the Secretary of State of the United States.

In proceedings for extradition of an alleged fugitive to a foreign country, habeas corpus is available only to inquire (1) whether the magistrate had jurisdiction; (2) whether the offense was within the treaty with that country, and (3) whether there was evidence to warrant a finding of reasonable ground to believe the accused guilty. Bernstein v. Gross (C. C. A.) 58 F.(2d) 154. In the instant proceeding it is conceded that the offense charged (2 above) is within the Canadian Extradition Treaty; also it clearly appears that there is reasonable ground to believe the relator guilty of the Canadian fraud charged in the warrant (3 above).

Does the question raised by the relator, viz., that he is exempt because of the provisions of the French Treaty by virtue of which he was extradited to the United States, go to the question of the jurisdiction of the magistrate? I think so.

Jurisdiction of the magistrate involves (1) his authority to act in extradition cases

Robert J. Fitzsimmons, of New York City (Louis Karasik, of New York City, of counsel), for relator.

Edward H. Lockwood, of New York City, for the United States.

HULBERT, District Judge.

The relator sued out a writ of habeas corpus to contest the validity of his commitment on the ground that the provisions of the Extradition Treaty between the republic of France and the United States of America have been violated.

264

as well as (2) his jurisdiction of the alleged fugitive both (a) as to the identity of the fugitive being properly established and (b) his possible exemption from any extradition.

It is admitted that the relator was not at liberty for one month after his discharge by the Court of General Sessions before his arrest in the present case.

■ However, since extradition is not a "trial" [Benson v. McMahon, 127 U. S. 457, 8 S. Ct. 1240, 32 L. Ed. 234] and is not "punishment" [U. S. ex rel. Oppenheim v. Hecht (C. C. A.) 16 F.(2d) 955], and no question arises here of his arrest or detention on civil process, it is my opinion that the provisions of the French Treaty are not violated.

■ The treaty in question contains no express provision as to further extradition to a third country of an extradited fugitive. Relator contends that he is thereby immune from extradition by the United States to Canada unless he has been at liberty one month after his discharge in the case for which he was extradited from France.

It is a significant fact that in eight treaties negotiated by the United States of America with an equal number of South and Central American republics prior to, and in the single treaty with the republic of Germany subsequent to, the Treaty with France, a specific provision was made in each of them, but omitted from the French Treaty, as to further extradition to a third country of an extradited fugitive.

But it is certainly not for the court to assume that the omission in the French Treaty was inadvertent, and, in effect, to write into it, for the benefit of the relator, the provision contained in the other treaties above mentioned.

The writ is dismissed, and the prisoner remanded to await the action of the State Department.

On Reargument.

Reargument was had upon an oral application of the present counsel for relator. After a careful consideration of the briefs and cases cited, I adhere to my original determination.

I have not heretofore held that the relator is extraditable to Canada. What I did decide was that no express provision is contained in the Treaty with France as to further extradition to a third country of an extradited fugitive. If the surrender of the relator to Canada constitutes a breach of faith on the part of the United States under the Treaty with France [37 Stat. 1526], that is a political and not a judicial question.

After reargument, counsel for relator requested an opportunity to submit some French records (not yet, however, received from Paris) and was informed that, unless counsel for respondent consented, this reargument must be upon the original record.

Nevertheless, there has been injected into the relator's reply brief a statement that prior to the relator's extradition to the United States, the Canadian government made a request of France for his extradition to Canada, upon the same charge upon which his extradition to Canada is now being sought; that a hearing was had in France and the magistrate refused to grant his extradition to Canada. Hence, it is contended by relator, any attempt by the United States to now extradite the relator to Canada would be a perversion of the French Treaty. That is a matter for the consideration of the State Department, which may not, in any event, issue the order sought by the Canadian government.

But the release of the relator would be an unwarranted interference with the exercise of the proper functions of that department, which has had this matter under consideration since my original disposition of this proceeding.