In re **EXTRADITION of Vito D'AMICO.**

United States District Court
S. D. New York.
Oct. 4, 1959.

James J. Cally, New York City, for Vito D'Amico.

Fink & Pavia, New York City, David A. Botwinik, New York City, of counsel, for Consul General of Italy at New York.

FREDERICK van PELT BRYAN, District Judge.

Relator, in custody of the United States Marshal in extradition proceedings brought by the Republic of Italy, seeks his release under writ of habeas corpus. The extradition proceedings are brought for a crime allegedly committed by relator in Italy in the year 1946. Extradition is sought pursuant to the Convention of 1868 between Italy and the United States (15 Stat. 629) as amended by the Supplementary Convention of 1844 (24 Stat. 1001). The Republic of Italy requested the Secretary of State of the United States to secure D'Amico's arrest as a preliminary to his extradition. The Secretary of State then issued a certificate which authorized

D'Amico's arrest and the commencement of extradition proceedings. 18 U.S.C. § 3184.[1]

The United States Commissioner for the Southern District of New York, duly authorized to act in the premises, issued a warrant for the arrest of D'Amico after receiving a complaint from a Consular Agent of the Republic of Italy in the State of New York. After D'Amico's arrest a hearing, as required by Section 3184, was held before Commissioner Bishopp on October 21, 30 and November 12, 1958, at which relator was represented by counsel. At the conclusion of the hearing the Commissioner found (1) that Vito D'Amico is the person mentioned in a judgment filed in Italy by the Court of Assize of Trapani on January 23, 1952; (2) that the evidence adduced at the hearing established that D'Amico was sought for the crimes of kidnapping and robbery as those crimes are understood both in Italy and the State of New York; (3) that there was probable cause to believe that these offenses were committed by D'Amico; and (4) that D'Amico is extraditable under the applicable treaties.

D'Amico was remanded to the custody of the United States Marshal. He petitioned this court for a writ of habeas corpus, which was issued. Bail was granted pending determination of the issues. The Commissioner's return to the writ was accompanied by the minutes of the testimony taken at the hearing and all of the documents in evidence, and asserts that the detention of D'Amico is lawful under Section 3184 and the applicable extradition treaty.

Most of relator's allegations in his petition for a writ are vague claims of unlawful detention. His most specific allegation is that his detention and restraint is unlawful in that the Italian government does not have "jurisdiction", nor did it "have jurisdiction at the time when it is alleged that the above named Vito D'Amico was in pari delicto with other persons" in commission of the crimes charged on or about April 15, 1946. He further alleges that he is "prepared to show that he at no time had any connection with the alleged crime * * *.[2] That he is not committed or detained by virtue of any process or mandate issued by any court of the United States except that Commissioner Earle Bishopp for the Southern District of New York has seen fit to commit and detain him for the State Department of the United States, and ultimately for the Republic of Italy".

When the matter came on to be heard before me relator did not request a hearing on any issues of fact and relied wholly on the record before the Commissioner, as does the Commissioner and the Republic of Italy. In addition to the questions specifically raised in his petition he now claims, as he did before the Commissioner, that he is not the Vito D'Amico sought by the Government of Italy, and that certain evidence at the Commissioner's hearing was the fruit of an illegal search and seizure in violation of his rights under the Fourth Amendment to the Constitution of the United States.

■■ The scope of inquiry by this court on application for a writ of habeas corpus in an extradition case is narrowly

---

1. Section 3184 provides that certain named officials "upon complaint made under oath, charging any person * * * with having committed within the jurisdiction of any such foreign government [governments with whom the United States has a treaty or convention for extradition] any of the crimes provided for by such treaty or convention" may issue a warrant of arrest, and after execution of the warrant to hear the evidence of criminality. This section goes on to provide that after such hearing if the evidence is "sufficient to sustain a charge under the provisions of the proper treaty or convention", that the official shall certify his finding together with a copy "of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, * * *."

2. See note 4 *infra.*

circumscribed. See Ornelas v. Ruiz, 161 U.S. 502, 16 S.Ct. 689, 40 L.Ed. 787. However, even assuming that relator was entitled to a full review of the facts, the Commissioner's findings are fully supported by the evidence and he committed no errors of law.

 The crimes for which relator's extradition is sought were committed on or about April 15, 1946, in the Province of Palermo in the Republic of Italy. The evidence adduced at the Commissioner's hearing included statements taken from the victim of the crimes and D'Amico's confederates. These statements were taken pursuant to Italian criminal procedure and were certified by the American Embassy in Rome as "properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of the Republic of Italy. * * *" The statements were therefore admissible at the hearing before the Commissioner. 18 U.S.C. § 3190. The decision of the Court of Assize of Trapani finding D'Amico and his codefendants guilty of the crimes charged were also included under the same certification.[3]

The evidence fully supports the Commissioner's finding that there is probable cause[4] to believe (a) that the crimes for which extradition is sought were committed, and (b) that D'Amico is guilty of them.

The crimes charged are those of "aggravated robbery" and kidnapping for the purpose of extortion under Articles 628 and 630 of the Italian Penal Code.

The evidence showed probable cause that on about April 15, 1956, in Palermo, a province of Italy, D'Amico and four others seized one Meo Vincenzo and kept him prisoner for several days; that they forced him to write a note demanding ransom in the sum of four million lire; and that at the time the victim was seized the kidnappers took from his home a substantial quantity of personal property and a smaller amount of money. Ultimately the victim was released without payment of ransom, apparently because the criminals' identity had become known to some of his relatives.

It is unnecessary to discuss in detail the statements of the witnesses, or to analyze the decision of the Italian court. It is sufficient to say that D'Amico's participation in the crime was testified to by one of his codefendants, and D'Amico's home was identified by the victim as the place where he was imprisoned for several days by the kidnappers.

Relator does not deny that the crimes for which extradition is sought were committed or that there is no probable cause to believe that *a* Vito D'Amico is guilty of them. He claims that he is not *the* Vito D'Amico sought.

No direct identification was made of D'Amico before the Commissioner but, quite apart from the identity of name, circumstantial evidence was adduced which convincingly demonstrates that the wanted D'Amico and relator are one and the same person.

 Relator claims part of this evidence of identity is infected with the taint of an illegal search. A passport and a document relating to the conveyance of certain lands were found at D'Amico's home by the Marshals who arrested him. It is claimed that the search which led to the discovery of these documents was unlawful since no search warrant had issued. Passing the question of whether the same constitutional standards apply to extradition pro-

---

3. D'Amico was tried and convicted *in absentia.* Counsel for the Republic of Italy has represented to the court that D'Amico will be tried anew if he is extradited. His conviction is regarded here as only a charge of crime. See Ex parte La Mantia, D.C.S.D.N.Y., 206 F. 330; Ex parte Fudera, C.C.S.D.N.Y., 162 F. 591.

4. Article I of the Treaty conditions extradition not on proof of guilt but upon "evidence of criminality as, according to the law of the place where the fugitive * * * shall be found, would justify his * * * apprehension and commitment for trial * * *."

ceedings and criminal trials, it is clear that there was no unlawful search. The Marshal testified that he was in possession of a warrant of arrest when he went to the apartment [5] at which D'Amico resided. No challenge is made as to the validity of this warrant.

Nothing rebuts the evidence adduced at the hearing that the search commenced after and incident to the execution of the warrant of arrest. It is clear that there was no initial purpose on the part of those executing the warrant to search rather than arrest. The arrest of D'Amico was the sole reason for their visit and the documents taken relate only to his identity. There was no purpose to establish criminality outside the scope of the arrest warrant. There was no roving search. Relator's contention that the search was unlawful is wholly without foundation. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. Cf. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514.

In addition to two documents found by the Marshals a third document to prove D'Amico's identity was introduced at the hearing without objection as to its competence. This is a certified copy from the records of the Immigration and Naturalization Service of the Department of Justice of relator's "Application for a Certificate of Arrival and Preliminary Form for Petition for Naturalization" which was executed by relator on January 13, 1950. This alone, even without the challenged documents, establishes that relator is the same D'Amico convicted by the Court of Assize of Trapani.

All of the documents agree that relator's name is Vito D'Amico, that he was born at Borgetto, Italy, on January 4, 1907, and that his father's given name was Antonio. The land conveyance, one of the documents taken from relator,

refers to a sale of property at Borgetto, Italy, in 1945 and lists as among those present before a notary, Vito D'Amico, son of Antonio, born in Borgetto. The vendee of the land was Vito D'Amico.

The statement of charges in the Italian criminal proceeding (which roughly corresponds to our form of indictment) refers to the accused as Vito D'Amico, son of Antonio, born in Borgetto on the 4th day of January, 1907.[6]

Thus, there is identity of name, birth place and father's given name which all identify relator with the Vito D'Amico convicted of robbery and kidnapping in Italy. Statements of his alleged confederates also refer to Vito D'Amico of Borgetto. Relator's contention that there is a failure of proof of identity is specious and without merit.

The sole remaining point for decision is whether D'Amico can be extradited under the Treaty of 1868 as amended. Relator contends that at the time the alleged crime was committed, April 15, 1946, a state of war existed between Italy and the United States. There is no doubt that a technical state of war existed at that time and continued until the proclamation of a treaty of peace in 1947 (61 Stat. 1245). By executive agreement between the United States and the Republic of Italy (February 6, 1948), pursuant to Article 44 of the Treaty of Peace the Convention of 1868 as amended, relating to extradition of criminals was recognized by both governments as being in force.

In Argento v. Horn, 6 Cir., 241 F.2d 258, Judge (now Mr. Justice) Stewart had occasion to consider the effects of the Second World War on the treaty here in issue. More recently Judge Smith considered the precise issues urged here. Gallina v. Frazer, D.C.D.Conn., 177 F. Supp. 856, May 15, 1958. There is no need to cover the same ground here.

---

5. An affidavit submitted by the Marshal describes D'Amico's home as being a small three room apartment.

6. The statement of charges is erroneously translated and refers to the accused's birth date as January 1, 1907. A glance at the Italian language original plainly shows the date of birth to be January 4.

As pointed out in the Argento case, while the Treaty of 1868 may be considered to have been suspended during World War II until the treaty of peace between the two governments, it is in that class of treaty which is revived by a formal cessation of hostilities.

As Judge Smith pointed out in Gallina, it is now well settled that the outbreak of war does not necessarily abrogate treaties or treaty provisions. Clark v. Allen, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633. The test seems to be whether the treaty by its nature is so incompatible with a state of war as to be voided by the commencement of hostilities. Cf. Karnuth v. United States ex rel. Albro, 279 U.S. 231, 49 S.Ct. 274, 73 L.Ed. 677. Treaties of alliance or of friendship and commerce are incompatible with the state of war and would require reappraisal and renegotiation at the cessation of hostilities. I agree with both Argento and Gallina that the treaty here under consideration, relating to the extradition of non-political criminals, was not voided by the outbreak of war and is now in full force and effect.[7]

It was held as long ago as 1874 that this treaty of extradition is retroactive in the sense that extradition could be sought for a crime committed before it was adopted. In re De Giacomo, C.C. S.D.N.Y., Fed.Cas. No. 3,747. See, also, United States ex rel. Oppenheim v. Hecht, 2 Cir., 16 F.2d 955. The Argento case holds that extradition for a crime committed prior to the outbreak of hostilities while the treaty was in full force and effect could be sought subsequent to the restoration of peace under the "revived" treaty. Gallina held that extradition could be had after the resumption of peace for a crime committed during a period of technical hostility while the treaty was in a state of "suspension". In essence this is the same as the holdings in In re De Giacomo, and Oppenheim, supra. There is no warrant for saying that a treaty of extradition may be retroactive to a time when the treaty had not yet been concluded but cannot retroactively cover a time when the treaty is merely "suspended".

There is no doubt here that the civil authorities of the government of Italy were in full control over the internal affairs of the locus of the crime in April of 1946. Relator's contention to the contrary is completely unsupported by any facts introduced at the hearing before the Commissioner and he presents nothing now to the contrary. It is therefore unnecessary to do more than to point to the Aide-Memoir of February 24, 1946, from the President of the Allied Control Commission to the Italian government which withdrew allied control over the internal affairs of Italy. Document 67, United States and Italy, 1936–1946, United States Government Printing Office, Washington, 1946. Indeed, diplomatic relations with Italy were resumed on December 7, 1944, when the Senate confirmed the nomination of an American Ambassador. Document 57, United States and Italy, 1936–1946, United States Government Printing Office, Washington, 1946.

All of relator's contentions are without merit. The determination of the Commissioner was not only within his jurisdiction but he was clearly right in his conclusion that there was probable cause to believe that a crime had been committed, that Vito D'Amico, the relator, had committed it, and that the crimes are such that relator may be extradited under the applicable treaties.

The writ heretofore issued must therefore be discharged and the relator remanded to the custody of the United States Marshal to await the warrant of the Secretary of State authorizing his surrender to the Republic of Italy, or such other order as the Secretary of State may issue.

So ordered.

7. I also agree with Judge Smith's view that the notification given by the Secretary of State of the United States on February 6, 1948, pursuant to Article 44 of the treaty of peace with Italy to the effect that the extradition treaty of 1868 as amended was regarded by the political department as being in full force and effect is entitled to great weight by the courts.