**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-6468

ALMAZ NEZIROVIC,

Petitioner - Appellant,

v.

GERALD S. HOLT, United States Marshal, Western District of
Virginia; BOBBY D. RUSSELL, Superintendent, Western Virginia
Regional Jail,

Respondents - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke. Michael F. Urbanski, District
Judge. (7:13-cv-00428-MFU; 7:12-mc-00039-RSB)

Argued: December 10, 2014          Decided: February 25, 2015

Before TRAXLER, Chief Judge, and KEENAN and THACKER, Circuit
Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion,
in which Chief Judge Traxler and Judge Thacker joined.

**ARGUED:** Andrew Wagner Childress, PAFFORD, LAWRENCE & CHILDRESS,
PLLC, Lynchburg, Virginia, for Appellant. Elizabeth G. Wright,
OFFICE OF THE UNITED STATES ATTORNEY, Harrisonburg, Virginia,
for Appellees. **ON BRIEF:** Timothy J. Heaphy, United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke,
Virginia, for Appellees.

BARBARA MILANO KEENAN, Circuit Judge:

Almaz Nezirovic, a citizen of Bosnia and Herzegovina, entered the United States as a refugee in 1997 in the wake of the war in the former country of Yugoslavia. In 2012, Bosnia and Herzegovina requested Nezirovic's extradition based on war crimes he allegedly committed during the conflict. A magistrate judge in the Western District of Virginia issued a certification of extraditability, finding that Nezirovic was subject to extradition under a treaty between the United States and Bosnia and Herzegovina.

Nezirovic filed a petition in the district court for habeas corpus relief under 28 U.S.C. § 2241 to challenge the magistrate judge's certification. The district court denied Nezirovic's petition. Nezirovic now appeals, arguing that his extradition is barred (1) under the applicable statute of limitations, and (2) by the exemption provided in the treaty for "political offenses." Upon our review, we affirm the district court's judgment.

I.

In the early 1990s, the former Socialist Federal Republic of Yugoslavia (Yugoslavia) collapsed, leading to a state of war between the country's ethnic groups. One of the constituent republics of Yugoslavia was the Socialist Republic of Bosnia and

Herzegovina. Between April and December 1992, Nezirovic served as a member of the Croatian Defense Council (HVO, abbreviated from its Croatian name), a paramilitary group that deemed itself "the supreme defense body of the Croat people in Herzeg-Bosnia." Nezirovic testified that he joined the HVO to protect himself and his family during the conflict after Serbian troops attacked Nezirovic's hometown. As a member of the HVO, Nezirovic was stationed as a guard at the Rabic internment camp in Bosnia and Herzegovina, which held in confinement persons of Serbian descent.

In January 1993, the Doboj Police Department of Bosnia issued a criminal report against Nezirovic, accusing him of committing war crimes against civilians while a guard at the Rabic camp. According to Bosnian authorities, Nezirovic engaged in the "individual and group torture and inhuman treatment of civilians of Serb nationality" detained at the camp, "causing great physical and emotional suffering and serious injuries." Bosnian authorities alleged that

> [Nezirovic] personally beat prisoners using his arms and legs, his rifle, batons or sticks, and other objects. The treatment included threats of death, and the detained Serbian civilians were forced to endure starvation and other severe adverse health conditions. [Nezirovic] further exposed these Serbian civilians to great humiliation by forcing them to remove their clothing and to crawl on the ground, putting their noses in others' anuses, and to eat grass on which others had urinated. [Nezirovic] also forced Serbian civilians to expose three specific fingers (ones the

3

prisoners, in the Orthodox tradition prevailing in the Serb community, would use for praying) on a table and he would then strike their fingers and the rest of their bodies using a rubber baton or stick.

A judge in Bosnia and Herzegovina issued a warrant for Nezirovic's arrest in 2003, six years after Nezirovic entered the United States. In 2012, Bosnian authorities made a request to the United States Department of State for Nezirovic's arrest and extradition pursuant to the Treaty Between the United States and Servia[1] for the Mutual Extradition of Fugitives from Justice, U.S.-Serb., Oct. 25, 1901, 32 Stat. 1890 (treaty).[2] The extradition request was accompanied by the statements of twenty-one witnesses, who claimed that Nezirovic committed acts of torture.

After determining that the extradition request was governed by a treaty, the Department of State referred the request to the Department of Justice, which represents foreign governments in extradition proceedings conducted in United States courts. See generally Gon v. Holt, 774 F.3d 207, 210 (4th Cir. 2014). Based on Nezirovic's place of residence in Roanoke, Virginia, the

---

[1] At the time the treaty was drafted, "Serbia" was translated with the spelling "Servia."

[2] The treaty was in force between the United States and Yugoslavia at the time of the alleged crimes. Following the dissolution of Yugoslavia, the treaty has applied to Bosnia and Herzegovina as a successor state. See In re Extradition of Handanović, 829 F. Supp. 2d 979, 985 (D. Or. 2011).

United States Attorney for the Western District of Virginia filed an extradition complaint for review by a magistrate judge in that district. See id. After an evidentiary hearing, the magistrate judge concluded that Nezirovic was subject to extradition under the treaty and entered a certification of extraditability. The district court later denied Nezirovic's habeas corpus petition. This appeal followed.

## II.

A magistrate judge conducting extradition proceedings is required to evaluate whether "the evidence [is] sufficient to sustain the charge" under the terms of the treaty. 18 U.S.C. § 3184. The limited purpose of an extradition hearing is to determine "(1) whether there is probable cause to believe that there has been a violation of the laws of the foreign country requesting extradition, (2) whether such conduct would have been criminal if committed in the United States, and (3) whether the fugitive is the person sought by the foreign country for violating its laws." Gon, 774 F.3d at 210 (citation omitted).

If the magistrate judge determines that these requirements have been met and that the applicable treaty does not otherwise bar extradition, the magistrate judge issues to the Secretary of State of the United States a certification of extraditability. 18 U.S.C. § 3184; Gon, 774 F.3d at 210; Mironescu v. Costner,

5

480 F.3d 664, 665 (4th Cir. 2007). An individual who is the subject of such a certification may challenge the magistrate judge's finding only by filing a petition for a writ of habeas corpus. Ordinola v. Hackman, 478 F.3d 588, 598 (4th Cir. 2007).

"Habeas corpus is available only to inquire whether the magistrate [judge] had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty of the asserted crimes."[3] Id. (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)) (internal quotation marks and brackets omitted). The Secretary of State makes the final determination whether to extradite the fugitive to the requesting country, considering "factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the judge's review." Mironescu, 480 F.3d at 666 (internal quotation marks, alterations, and citation omitted); Gon, 774 F.3d at 210; 18 U.S.C. §§ 3184, 3186.

---

[3] We have held that in certain circumstances, district courts considering a habeas corpus petition may also consider claims that a fugitive's extradition would violate the United States Constitution or a federal statute. See Mironescu, 480 F.3d at 670-73; Plaster v. United States, 720 F.2d 340, 349 (4th Cir. 1983).

6

The United States and Serbia ratified the treaty at issue in this case in 1902.[4]  The parties to the treaty agreed to the extradition of persons who have "been charged with or convicted of" specified crimes in either country, "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offense had been committed there."  Treaty art. I.  Although not initially listed in the treaty as an offense for which extradition was available, the offense of torture became an extraditable crime when the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) was incorporated into the treaty in 1994.

In the present case, Nezirovic does not dispute that he is the person sought by Bosnian authorities for violation of certain laws of Bosnia and Herzegovina, and that the conduct alleged by the Bosnian authorities would have been criminal if committed in the United States.  See Gon, 774 F.3d at 210.  Nor does Nezirovic dispute that, subject to the treaty exceptions he argues here, the statements of the twenty-one witnesses are sufficient to establish probable cause to support a finding that there have been violations of the laws of Bosnia and

---

[4] Nezirovic does not contest that this treaty is applicable to the present request for his extradition.

Herzegovina.  See id.  Instead, Nezirovic alleges that two provisions in the treaty prevent his extradition for the alleged offenses.

The first treaty provision on which Nezirovic relies prohibits extradition for offenses that are time-barred in the surrendering country.  Article VII of the treaty provides that

> [e]xtradition shall not be granted, in pursuance of the provisions of this Treaty, if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, according to the laws of the country to which the requisition is addressed.

The second provision of the treaty cited by Nezirovic exempts from extradition "political offenses."  Article VI of the treaty states that

> [a] fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character.

We address in turn Nezirovic's challenges under these articles of the treaty.

A.

We first consider Nezirovic's claim that his extradition is barred by the statute of limitations applicable to his charged offenses.  He contends that the magistrate judge and the district court erred in applying the indefinite limitations period in the United States Torture Act (the Torture Act or the

8

Act), 18 U.S.C. § 2340A. He asserts that although the Torture Act is the United States statute most analogous to his alleged Bosnian crimes, application of the Act's statute of limitations would violate ex post facto principles because the Act became effective two years after his alleged conduct occurred. Nezirovic urges us instead to use the five-year statute of limitations applicable to the crime of assault under 18 U.S.C. § 113. See 18 U.S.C. § 3282 (establishing general five-year statute of limitations for non-capital offenses). We disagree with Nezirovic's arguments.

We apply the statute of limitations applicable to the substantive offense under United States law that is most closely analogous to the charged offenses. Sainez v. Venables, 588 F.3d 713, 716 (9th Cir. 2009). Because Nezirovic is charged under the laws of Bosnia and Herzegovina with war crimes against civilians, including torture and inhuman treatment, the Torture Act, which criminalizes acts of torture and attempted torture, is the United States statute most closely analogous to the charged offenses.[5] There is no statute of limitations under the

---

[5] The Torture Act defines "torture" as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." 18 U.S.C. § 2340.

9

Torture Act when, as here, the acts of torture "resulted in, or created a forseeable [sic] risk of, death or serious bodily injury to another person."[6]  18 U.S.C. § 3286(b); 18 U.S.C. § 2332b(g)(5)(B)(i).

To determine whether Nezirovic is subject to extradition, we look to the law in place at the time the extradition request was made, not the law in effect when Nezirovic allegedly committed the offenses.  See United States ex rel. Oppenheim v. Hecht, 16 F.2d 955, 956-57 (2d Cir. 1927); Hilario v. United States, 854 F. Supp. 165, 176 (E.D.N.Y. 1994).  Therefore, the treaty may be applied retroactively in this case to render Nezirovic extraditable for earlier conduct.[7]  See Hecht, 16 F.2d at 956-57; see also Galanis v. Pallanck, 568 F.2d 234, 237 (2d Cir. 1977) (noting the "long-established rule that extradition treaties, unless they contain a clause to the contrary, cover offenses committed prior to their conclusion") (citations and internal quotation marks omitted).  Applying the same reasoning,

---

[6] An eight-year statute of limitations applies if the conduct did not involve the risk of death or serious bodily injury.  18 U.S.C. § 3286(a).  Nezirovic does not contend that the allegations against him would qualify for the eight-year limitations period.

[7] Despite raising an ex post facto challenge to the Torture Act's statute of limitations, Nezirovic does not argue that ex post facto principles otherwise bar his extradition on charges of torture because that crime was not an extraditable offense under the treaty at the time of his conduct.

10

the United States, as the surrendering state, may lengthen retroactively the statute of limitations applicable to extraditable conduct. Cf. In re Extradition of McMullen, 989 F.2d 603, 611-13 (2d Cir. 1993) (en banc) (concluding that a supplementary treaty did not violate the prohibition against bills of attainder when the treaty narrowed the definition of the political offense exception to extradition, causing a fugitive who was previously protected by the exception to be eligible for extradition).

Ex post facto principles do not affect this rule to bar the retroactive application of the Torture Act's statute of limitations. The Ex Post Facto Clause of the United States Constitution "prohibits laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" United States v. Farrow, 364 F.3d 551, 554 (4th Cir. 2004) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). However, this constitutional protection has "no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country," as in the case of a fugitive facing extradition for crimes committed outside the United States. Neely v. Henkel, 180 U.S. 109, 122 (1901); see also Snider v. Seung Lee, 584 F.3d 193, 201 (4th Cir. 2009) ("[T]he Supreme Court has made clear that U.S. constitutional protections do not extend to foreign prosecutions.").

11

Our conclusion is not altered by Nezirovic's contention that the terms of the present treaty contain additional ex post facto guarantees that otherwise would not be available. We construe extradition treaties liberally in favor of surrendering a fugitive to the requesting country, "in the interest of justice and friendly international relationships." Factor v. Laubenheimer, 290 U.S. 276, 298, 303 (1933); In re Extradition of Handanović, 829 F. Supp. 2d 979, 989 (D. Or. 2011) (citing Factor, 290 U.S. at 293-94). Nezirovic fails to identify any specific language in the treaty granting any ex post facto protections to fugitives. And we observe that Article VII of the treaty is silent regarding whether the surrendering country's statute of limitations should be applied based on the date of the alleged crime or on the date of the extradition request.[8]

Under these circumstances, we apply the indefinite limitations period from the Torture Act that was in place at the

_____

[8] In support of his timeliness argument, Nezirovic relies heavily on a magistrate judge's decision from the Eastern District of Kentucky addressing the same treaty at issue in the present case. See In re Extradition of Azra Basic, 2012 U.S. Dist. LEXIS 104945 (E.D. Ky. July 27, 2012). The court in Basic concluded that the timeliness provision in Article VII "requires a hypothetical prosecution, on American soil, of the 1992 conduct." Id. at *49-50 n.20. The court held that ex post facto principles barred prosecution under the Torture Act for conduct occurring in 1992 and, thus, that the Act's statute of limitations also was inapplicable. Id. at *49. For the reasons discussed above, we disagree with this reasoning.

12

time of the extradition request. We therefore conclude that the request for Nezirovic's extradition is not time-barred under Article VII of the treaty.

B.

Nezirovic next argues that he is not subject to extradition because the allegations against him constitute political offenses exempt from extradition under the terms of the treaty. He contends that the magistrate judge and the district court erred in reaching a contrary conclusion, because his alleged offenses, when viewed objectively, were political in nature, and because his subjective intent manifested his political motivations. We disagree with Nezirovic's arguments and conclude that the political offense exception does not preclude his extradition under the treaty.

The political offense exception of the treaty prohibits the extradition of a person accused of offenses that are political in nature. Ordinola, 478 F.3d at 595. In addition to "pure" political offenses, such as treason and espionage, the exception also protects from extradition persons charged with "relative" political offenses, which are "common crimes . . . so intertwined with a political act that the offense itself becomes a political one." Id. at 596.

To qualify for the exception as a "relative" political offense, the alleged conduct "must have been incidental to or in

13

furtherance of a violent political uprising" that was occurring in the requesting country at the time of the alleged offenses, or incidental to quelling such an uprising.[9] Id. at 596-97, 599-600. We apply a two-pronged test to determine whether a fugitive's actions were incidental to a political disturbance. We consider (1) whether the fugitive subjectively was politically motivated to commit the offenses, and (2) whether the offenses, when viewed objectively, were political in nature. Id. at 600.

The issue whether a person is charged with commission of a political offense presents a mixed question of law and fact, but primarily is a question of fact. Id. at 598. We accord significant deference to the factual findings of the magistrate judge, and will reverse the judge's determination regarding whether a political offense has been established only if the determination is "palpably erroneous in law and a reasonable factfinder would have had no choice but to conclude that the offender was acting in furtherance of a political uprising." Id. (quoting Ornelas v. Ruiz, 161 U.S. 502, 509, 511 (1896)) (internal quotation marks omitted).

---

[9] The parties do not contest the magistrate judge's decision to take judicial notice of the conflict in Bosnia and Herzegovina between March 1992 and December 1995 or the judge's conclusion that Nezirovic's alleged conduct occurred during a violent political uprising.

14

The magistrate judge concluded that Nezirovic's alleged conduct was not subjectively motivated by a political aim, and that the offenses were not political in nature when viewed objectively. In conducting our review, we need not decide whether Nezirovic has satisfied the subjective prong of the two-part test, because we conclude that he cannot demonstrate that his offenses were political in nature when viewed objectively. See Ordinola, 478 F.3d at 600-01 (assuming without deciding that a fugitive's actions were motivated by subjective political considerations, and concluding that the offenses were not political when viewed objectively).

We require that a fugitive make an objective showing that the charged offenses are political in nature, because extradition treaties do not protect acts simply because a fugitive can proffer a subjective political rationale for having committed them. Id. at 600. Accordingly, in applying the objective prong of the test, we "look to the totality of the circumstances, focusing on such particulars as the mode of the attack and the identity of the victims." Id. at 601. A fugitive's commission of crimes against innocent civilians is highly relevant, and likely is fatal, to a claim that the offenses were political in nature when viewed objectively. Id. at 603-04; see also Eain v. Wilkes, 641 F.2d 504, 521 (7th Cir.

15

1981) (explaining that "the indiscriminate bombing of a civilian populace" is not a political act).

We strongly affirm our reasoning in Ordinola that the civilian status of victims largely will be determinative of the objective inquiry. We previously have relied on the Department of State's view that the political offense exception "is not applicable to violent attacks on civilians," and have granted this position great weight in our analysis. Ordinola, 478 F.3d at 603 (citation omitted). Moreover, the original justification for the political offense exception, namely, the protection of the "inalienable right to resist and abolish tyrannical governments," id. at 595-96, is not served by granting individuals refuge from extradition when they have employed violence against civilians.

In holding that Nezirovic's offenses were not political in nature when viewed objectively, the magistrate judge found that Nezirovic's victims were civilians, relying on the language of the war crimes charge and the representations of the authorities from Bosnia and Herzegovina. The magistrate judge also found that "Nezirovic's alleged actions of torture against his prisoners [were not done] in furtherance of his military duty to keep them 'locked up,'" because his "alleged conduct of beating, degrading and humiliating prisoners went well beyond his duties to guard the prisoners." Nezirovic does not identify any

16

contrary facts demonstrating that the magistrate judge clearly erred in making these factual findings.[10]

We also observe that the international community repeatedly has condemned the use of torture. See Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment art. 2 (1994) ("No exceptional circumstances whatsoever, whether a state of war or a threat or war, internal political instability or any other public emergency, may be invoked as a justification of torture."); Geneva Convention Relative to the Protection of Civilian Persons in Time of War art. 147, Aug. 12, 1949, 6 U.S.T. 3516 (describing as a "grave breach" the torture or inhuman treatment of protected persons); id. art. 3 ("[M]embers of armed forces who have laid down their arms and those placed hors de combat by . . . detention, or any other cause, shall in all circumstances be treated humanely, . . . ."). The torture of prisoners cannot be justified on the basis that such torture has occurred in the context of a political disturbance. See Arambasic v. Ashcroft, 403 F. Supp. 2d 951, 963 (D.S.D. 2005) ("Political strife is not a license for the military or anyone else to do whatever they wish to the

---

[10] Nezirovic's contention that he believed that his prisoners were enemy combatants, not civilians, is irrelevant to our analysis of the objective prong, in which we examine the nature of the offense from an objective perspective, without regard to Nezirovic's subjective motivations.

17

defenseless that have come under their power."); cf. Eain, 641 F.2d at 521 (rejecting the contention that "isolated acts of social violence undertaken for personal reasons" are protected by the political offense exception "simply because they occurred during a time of political upheaval").

Accordingly, we conclude that, under the totality of the circumstances presented, the acts of torture allegedly perpetrated by Nezirovic against civilians preclude application of the political offense exception. We therefore hold that this exception in the treaty does not bar Nezirovic's extradition.[11]

## III.

For these reasons, we hold that Nezirovic's extradition is neither time-barred nor precluded by the political offense exception in the treaty. We affirm the district court's judgment denying Nezirovic's petition for a writ of habeas corpus.

AFFIRMED

---

[11] Like the magistrate judge and district court, we reject outright Nezirovic's argument that he deserves the benefit of the political offense exception because his crimes were allegedly lesser in severity than the atrocities committed by the Bosnian-Serbs.

18